**United States District Court**
DISTRICT OF DELAWARE

UNITED STATES OF AMERICA

v.

REMIGIO CAMACHO

**Criminal Complaint**

CASE NUMBER: 07-246-M

I, the undersigned complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief.

On or about November 27, 2007 in the State and District of Delaware, REMIGIO CAMACHO, defendant herein, did knowingly distribute five grams or more of methamphetamine (actual), a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B)(viii).

On or about November 27, 2007 in the State and District of Delaware, REMIGIO CAMACHO, defendant herein, did knowingly distribute a mixture and substance containing a detectable amount of marijuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(D).

On or about November 27, 2007, in the State and District of Delaware, REMIGIO CAMACHO, defendant herein, in furtherance of a drug trafficking crime for which he may be prosecuted in a court of the United States (to wit, the distribution of methamphetamine (actual) and a mixture and substance containing a detectable amount of marijuana in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) and (D)), knowingly possessed a firearm, to wit, a CAI Georgia VT 7.62 SKS assault rifle (serial number 0604427) with two (2) "banana clip" magazines, all in violation of Title 18, United States Code, Section 924(c)(1).

On or about December 11, 2007 in the State and District of Delaware, REMIGIO CAMACHO, defendant herein, did knowingly possess with the intent to distribute fifty grams or more of methamphetamine (actual), a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A)(viii).

On or about December 11, 2007 in the State and District of Delaware, REMIGIO CAMACHO, defendant herein, did knowingly possess with the intent to distribute fifty grams or more of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B)(viii).

On or about December 11, 2007 in the State and District of Delaware, REMIGIO CAMACHO, defendant herein, did knowingly possess with the intent to distribute a mixture and substance containing a detectable amount of marijuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(D).

On or about December 11, 2007, in the State and District of Delaware, REMIGIO CAMACHO, defendant herein, in furtherance of a drug trafficking crime for which he may be prosecuted in a court of the United States (to wit, the possession with the intent to distribute fifty grams or more of methamphetamine (actual), the possession with the intent to distribute fifty grams or more of a mixture and substance containing a detectable amount of methamphetamine, and the possession with intent to distribute a mixture and substance containing a detectable amount of marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(viii), (B)(viii), and (D)), knowingly possessed a firearm, to wit, a Kassner Import 20 gauge double barrel shotgun (serial number 92128), all in violation of Title 18, United States Code, Section 924(c)(1).

I further state that I am a(n) __Special Agent, Department of Homeland Security, ICE__ and that this complaint is based on the following facts:

See attached Affidavit.

Continued on the attached sheet and made a part hereof:   Yes X

*(signed)* Patrick M. McCall
Signature of Complainant
Patrick McCall
Special Agent, ICE

Sworn to before me and subscribed in my presence,

December 12, 2007                                   at   Wilmington, DE
Date                                                     City and State

Honorable Leonard P. Stark
United States Magistrate Judge                           *(signed)*
Name & Title of Judicial Officer                         Signature of Judicial Officer

## AFFIDAVIT

Your affiant is a Special Agent of the United States Immigration and Customs Enforcement (ICE) at Philadelphia, Pennsylvania and has been so employed for approximately nineteen (19) years. Being duly sworn, your affiant deposes and says as follows:

1. On or about November 7, 2007, the U.S Immigration and Customs Enforcement (ICE) Wilmington, Delaware Office was contacted by agents of the ICE Special Agent in Charge (SAC) Newark, New Jersey Office regarding a Mexican methamphetamine smuggling group that was operating in the Wilmington, Delaware area. At this time, ICE SAC-Newark agents stated that they had a confidential source who had been in contact with several Mexican nationals in the Wilmington, Delaware area that were involved in the smuggling of methamphetamine and crystal methamphetamine ("Ice"). These drugs were shipped from Mexico to Indiana and Delaware and this organization was also involved in the laundering and shipment of drug proceeds back to Nuevo Laredo, Mexico by vehicles with hidden compartments. The targets of the organization also had family members in Indiana that were involved in the drug distribution in Indiana.

2. On or about November 6, 2007, the confidential informant met with Remigio CAMACHO, a target of this investigation, at the residence of CAMACHO located at , Wilmington, Delaware. At this time, CAMACHO provided the confidential source with a sample of approximately 16.8 grams of crystal methamphetamine ("Ice") and methamphetamine. This sample was subsequently turned

over to ICE Newark agents and was seized. While obtaining the sample, the source negotiated with Remigio CAMACHO for the delivery of quantities of methamphetamine and "Ice" from Indiana. The source was quoted a price of $1000 for an ounce of "Ice" and $900.00 for an ounce of methamphetamine by CAMACHO. While inside the residence, Remigio CAMACHO showed the source approximately 500 grams of crystal methamphetamine ("Ice") which was secreted within a hidden portion of the garage wall. (The garage is part of the residence and can be entered through the basement.) The source was also shown an additional quantity of methamphetamine on the second floor of the residence by CAMACHO. CAMACHO stated to the source that he could supply the source with multi-pound quantities of either methamphetamine or crystal methamphetamine ("Ice") from the border if needed. During the meeting, the source was also shown an AK-47 type assault rifle and was told by CAMACHO that he was involved in shipping these weapons back to Mexico. CAMACHO stated that to date they had shipped three (3) of these type of weapons to Mexico.

    3.    On November 10, 2007, the source traveled Wilmington, Delaware and met with Remigio CAMACHO. During this meeting the source was told by CAMACHO that he could purchase an AK-47 from him for $500.00. The source agreed to possibly purchase one of these weapons at a later date.

    4.    From November 10, 2007 through November 26, 2007, the confidential source had numerous conversations with CAMACHO regarding the sale and purchase of crystal methamphetamine ("Ice"). Specifically, on November 27, 2007, the confidential source contacted CAMACHO and stated that he was in route to CAMACHO'S residence at _____ Wilmington, Delaware to purchase approximately one (1)

ounce of "Ice" for $1000.00.

5. On November 27, 2007, the confidential source met with Remigio CAMACHO at 314 South Broom Street, Wilmington, Delaware regarding the purchase of one (1) ounce of crystal methamphetamine ("Ice") and to negotiate for the delivery of a larger quantity of "Ice" in Wilmington, Delaware. During the meeting, the source provided CAMACHO with $1000.00. In turn, CAMACHO provided the source with one (1) ounce of crystal methamphetamine ("Ice"), a small amount of marijuana, and a CAI Georgia VT 7.62 SKS assault rifle (serial number 0604427) with two (2) "banana clip" magazines. CAMACHO agreed to "front" the assault rifle to the source for a later payment of $500.00. The source also negotiated for the delivery of approximately one (1) kilo of crystal methamphetamine ("Ice") in Wilmington, Delaware. During the meeting, CAMACHO admitted to the source that they had recently transported 20 pounds of marijuana from Indiana for sale in Wilmington, Delaware. During the meeting, CAMACHO also discussed traveling to Indiana to transport more drugs back to Wilmington, Delaware in his vehicle.

6. On December 10, 2007, the confidential source met with Remigio CAMACHO a\                          , Wilmington, Delaware regarding payment for the CAI Georgia VT 7.62 assault rifle purchased on November 27, 2007. At this time, the source provided CAMACHO with a payment of $500.00 to CAMACHO for the CAI Georgia VT 7.62 SKS assault rifle with two (2) "banana clip" magazines. While inside the residence, the source was shown approximately thirteen (13) pounds of marijuana in a black suitcase in the basement of the residence by CAMACHO. CAMACHO stated to the source that he was going to transport the 500 grams of crystal methamphetamine

("Ice") back to Indiana unless the drugs could be sold in Wilmington, Delaware.

7. At approximately 5:00 P.M., the confidential source contacted Remigio CAMACHO by telephone and had conversations regarding the sale of the crystal methamphetamine ("Ice"). At this time, the source stated that he had a possible buyer for the "Ice" and requested that CAMACHO not go to Indiana but wait to see if the payment for the drugs could be obtained by the source.

8. At approximately 6:30 P.M., on December 10, 2007, the confidential source contacted Remigio CAMACHO and stated that he was interested in purchasing the 500 grams of crystal methamphetamine ("Ice") for approximately $8,000.00. The source stated the he would contact Remigio CAMACHO later in the afternoon on December 11, 2007 to arrange payment at                          , Wilmington, Delaware and to obtain the drugs from him.

9. On December 11, 2007, the Court authorized a search warrant for                          Wilmington, Delaware.

10. On December 11, 2007, at approximately 3 p.m., law enforcement officers established surveillance of                          Wilmington, Delaware in anticipation of the execution of the search warrant. At approximately 3:30 p.m., officers saw CAMACHO arrive at 314 South Broom Street.

11. On December 11, 2007, at approximately 3:45 p.m., the confidential source, at my direction, placed a consensually recorded telephone call to the cell phone of Remigio CAMACHO. The confidential source told CAMACHO that he had the $8,000.00 to purchase the 500 grams of crystal methamphetamine ("Ice") and was on his way to CAMACHO's residence a                          , Wilmington, Delaware.

CAMACHO agreed to meet the confidential source at his residence and said he would have the drugs ready.

12. At approximately 4 p.m., law enforcement officers arrived at Wilmington, Delaware to execute the warrant. Prior to executing the search warrant, officers saw CAMACHO exit the residence and secured him outside, near his car. Officers brought CAMACHO back inside the residence, where he remained during the execution of the search warrant. I advised CAMACHO of his Miranda rights, which he waived in writing. I asked CAMACHO if there were any drugs or guns in the house. CAMACHO advised that there was a shotgun on the second floor and marijuana in the basement. CAMACHO accompanied me to the basement and showed me a box containing approximately 13 pounds of marijuana. CAMACHO then returned to the living room. A Wilmington police department canine alerted to a section of wall in the basement. (The confidential source had previously advised me that there was a hidden compartment in the basement wall and had correctly advised me of its location.) I removed a section of dry wall and found a hidden compartment containing 256 grams of methamphetamine wrapped in foil balls contained in an opaque black trash bag.

13. After discovering the methamphetamine, your affiant returned to the living room and asked CAMACHO what was in the black trash bag. He replied that it was "crystal", approximately six or seven ounces. At the time he made this statement, CAMACHO could not see inside the black trash bag.

14. After continuing to search the house, ICE agents discovered approximately 209 grams of crystal methamphetamine ("Ice") in a Coors Lite portable cooler, hanging under the stairs in the basement. The crystal methamphetamine ("Ice") was packaged in

foil balls contained in foil and clear plastic wrap.

15. Your affiant brought the foil wrapped Ice (which had been found in the Coors Lite portable cooler) up to the living room and showed it to CAMACHO. I asked CAMACHO what it was. CAMACHO replied that the substance was "Ice", approximately one half pound. At the time he made this statement, CAMACHO could not see inside the foil wrapping.

16. Officers searching CAMACHO's second floor bedroom found a Kassner Import 20 gauge double barrel shotgun (serial number 92128) located in the bedroom closet. Also found in CAMACHO's second floor bedroom (in a dresser drawer) was approximately one pound of marijuana. Officers found indicia of CAMACHO's occupancy of the bedroom such as personal photographs and a cable bill.

17. Based on my experience and training, I know that "Ice" is a street name for crystal methamphetamine, which is actual methamphetamine. Based on my experience and training, I know that drug traffickers utilize firearms in furtherance of drug trafficking, both by selling them in conjunction with drug sales and by storing them to defend locations where drugs or drug proceeds are stored.

Based on the foregoing, your affiant believes there is probable cause to believe that Remigio CAMACHO has committed the violations listed in the attached criminal complaint.

*Patrick M. McCall*
PATRICK M. MCCALL
Special Agent
U.S. Immigration and Customs Enforcement (ICE)

Sworn to and subscribed before me
*[signature]*
U.S. Magistrate Judge